**SIGNED THIS: February 26, 2010**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**

```
                UNITED STATES BANKRUPTCY COURT

                  CENTRAL DISTRICT OF ILLINOIS

In Re                         )
                              )    In Bankruptcy
RONALD L. GIBSON,             )
                              )    Case No. 04-71343
          Debtor.             )
```

# O P I N I O N

Before the Court is a Motion for Disqualification of Judge filed by Attorney John S. Narmont.  Mr. Narmont asks the Court to disqualify itself from presiding over further proceedings in this case.  Mr. Narmont contends that the Court has a bias against him and, accordingly, that there is a significant risk that this Court will not act impartially in deciding pending matters.  For the reasons set forth below, the Motion for Disqualification will be denied.

Ronald Gibson filed a voluntary petition under Chapter 12 of

the Bankruptcy Code on March 22, 2004. Over the course of several months thereafter, the case was converted to a case under Chapter 11 and then back to a case under Chapter 12.[1] Also, during the same period of time, Mr. Narmont, who represented Mr. Gibson at all times, filed three applications for compensation, each of which was allowed. Mr. Gibson's Chapter 12 plan was confirmed by order entered April 8, 2005. The case was dismissed at the request of Mr. Gibson on July 11, 2005. All of this occurred under the tenure of this Court's predecessor.

In September 2008, Mr. Gibson and his daughter sent a letter to the Court which referenced a memorandum of judgment recorded by Mr. Narmont relating to attorney fees approved in this case. In the letter, Mr. Gibson asserts that Mr. Narmont filed a memorandum of judgment with the Greene County, Illinois Recorder on July 5, 2005 - while the Chapter 12 case was still pending - in an effort to place a lien on Mr. Gibson's real estate. Mr. Gibson asks the Court to "give approval to dismiss and remove the lien." The

---

[1] The case was originally improperly filed in the Southern District of Illinois even though Mr. Gibson was a resident of the Central District of Illinois. Venue of the case was transferred on the motion of Mr. Gibson. Further, at the time the case was filed, the sunset provisions of Chapter 12 had taken effect and, as of January 1, 2004, Chapter 12 was not an available option for bankruptcy filers. *See* Family Farmer Bankruptcy Relief Act of 2003, Pub. L. No. 108-73, §2(a), 177 Stat. 891 (Aug. 15, 2003). Chapter 12 was subsequently extended and that extension was retroactive to January 1, 2004. *See* Family Farmer Bankruptcy Relief Act of 2004, Pub. L. No. 108-369, 118 Stat. 1749 (Oct. 10, 2004).

letter also makes reference to the fact that Mr. Narmont's conduct in this case had been reported by Mr. Gibson to the Illinois Attorney Registration and Disciplinary Commission ("ARDC").

The Court initially construed Mr. Gibson's letter as a motion to reopen the bankruptcy case and as a motion to avoid a lien.[2] The Court granted the request to reopen the case in order to consider the relief requested by Mr. Gibson. *See* 11 U.S.C. §350(b). A hearing was scheduled on the lien avoidance issue. At the hearing, the Court stated that Mr. Gibson's letter also appeared to be seeking a finding of contempt and the imposition of sanctions against Mr. Narmont for violation of the automatic stay and the terms of the confirmed Chapter 12 plan. The parties proceeded to present their arguments on the issues raised by Mr. Gibson's letter and this Court took the matters under advisement. On November 5, 2008, the Court entered an Order finding Mr. Narmont to be in indirect civil contempt for his conduct in filing the memorandum of judgment while the Chapter 12 case was pending and

---

[2]  It is not unusual for *pro se* filings to be made in the form of correspondence. The docketing and noticing of such filings can be problematic for the Court and Clerk's office staff. The docket and hearing notice for such filings may - and perhaps in many cases should - simply say "correspondence." However, the specific relief sought in a filing often controls the extent and type of notice which must be sent and also determines whether a fee is due for the filing. *See* Fed.R.Bankr.P. 2002; 28 U.S.C. §1930. Thus, there is often reason for correspondence to be characterized as a particular type of motion based on the relief which appears to be requested.

the Chapter 12 plan was in full force and effect. The November 5th Order required Mr. Narmont to release the memorandum of judgment.

Mr. Narmont filed a timely appeal of the November 5th Order. In an Order and Opinion entered May 15, 2009, United States District Judge Jeanne E. Scott held that this Court had erred when it found Mr. Narmont in contempt in the November 5th Order because Mr. Narmont had not been provided adequate notice and a full opportunity to be heard on the contempt issue.  The case was remanded for further proceedings consistent with Judge Scott's Opinion. In re Gibson, 2009 WL 1393289 (C.D. Ill. May 15, 2009).

On June 15, 2009, this Court entered an Order notifying the parties that the Court intended to reconsider Mr. Gibson's letter filed September 29, 2008.  The Order specifically provided that the Court interpreted Mr. Gibson's letter as seeking sanctions and a finding of contempt against Mr. Narmont.  Mr. Narmont was given an opportunity to file a memorandum of law setting forth his position and supporting authority, and a briefing schedule was set for the filing of a response by Mr. Gibson and a reply by Mr. Narmont. Both parties were also offered the opportunity to request an evidentiary hearing.  The Order stated that, if no hearing was requested, the matter would be taken under advisement upon the conclusion of the briefing schedule.

The scheduled briefing has now been completed.  In addition to his filings on the substantive issues, however, Mr. Narmont also

filed his Motion for Disqualification of Judge and a Memorandum of Law in support thereof.  In his Memorandum, Mr. Narmont states that there is a pending proceeding against him before the ARDC.  He asserts that "[t]he ARDC Complaint includes charges based upon this case, and upon other cases which were supplied to the ARDC by the Court."  Mr. Narmont claims that, "[t]his Court's extensive participation in the disciplinary proceeding and its apparent investigation of extrinsic facts are evidence of the Court's personal bias."  Thus, Mr. Narmont contends that "[t]his Court's prosecutorial posture toward [Mr. Narmont] seriously calls into question its impartiality in this case[.]"  In seeking his relief, Mr. Narmont relies on §455 of Title 28 of the United States Code.

Federal Rule of Bankruptcy Procedure 5004(a) provides as follows:

> (a) Disqualification of Judge.  A bankruptcy judge shall be governed by 28 U.S.C. §455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

Fed.R.Bankr.P. 5004(a).

Section 455 of Title 28 U.S.C. provides in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal

>     knowledge of disputed evidentiary facts
>     concerning the proceeding[.]

28 U.S.C. §455(a)-(b)(1).

Section 455 clearly imposes a duty directly on the judge to evaluate his own conduct and rule on the disqualification issue. Levitt v. University of Texas at El Paso, 847 F.2d 221, 226 (5th Cir. 1988), *cert. denied* 488 U.S. 984, 109 S.Ct. 536, 102 L.E.2d 567 (1988). Section 455 does not require the judge to accept all allegations by the moving party as true. U.S. v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986). "If a party could force recusal of a judge by factual allegations, the result would be virtual 'open season' for recusal." Id. (citation omitted). Thus, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified." Laird v. Tatum, 409 U.S. 824, 837, 93 S.Ct. 7, 15, 34 L.Ed.2d 50 (1972) (citations omitted).

Section 455(a) requires disqualification "in any proceeding in which [the Court's] impartiality might reasonably be questioned." 28 U.S.C. §455(a). The test for determining whether a judge should be disqualified under this subsection is whether a reasonable person would perceive a significant risk that the judge will resolve the case on a basis other than the merits. Hook v. McDade, 89 F.3d 350, 354 (7th Cir. 1996), *cert. denied sub nom* In re Hook, 519 U.S. 1071, 117 S.Ct. 718, 136 L.Ed.2d 637 (1997). The standard is an objective one from the viewpoint of a thoughtful and well-

informed observer, not a "hypersensitive, unduly suspicious person". Id. A party moving for recusal has the burden of producing facts which would raise doubts about the judge's impartiality. In re Betts, 165 B.R. 233, 238 (Bankr. N.D. Ill. 1994) (citation omitted). A judge should not recuse himself if the alleged bias stems from facts the judge has learned when participating in the case in his judicial capacity. Id. (citation omitted).

A federal judge must recuse himself from a proceeding "[w]here he has a personal bias or prejudice...[.]" 28 U.S.C. §455(b)(1). In determining whether the judge's disqualification is required under 28 U.S.C. §455(b)(1), the question is whether a reasonable person would be convinced of the judge's bias. Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1255 (7th Cir. 1993) (citations omitted). Actual bias or prejudice must be alleged and established by compelling evidence. U.S. v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985). Moreover, that bias must arise from an extrajudicial source. Hook, 89 F.3d *at* 355. Thus, judicial rulings and opinions formed during the course of proceedings almost never constitute a valid basis for recusal, unless they display a "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky v. U.S., 510 U.S. 540, 556, 114 S.Ct. 1147, 1158, 127 L.Ed.2d 474 (1994). Judges do not demonstrate

possible bias or prejudice when they discharge the obligation to alert disciplinary authorities to possibly unethical conduct by attorneys.  U.S. v. Mendoza, 468 F.3d 1256, 1262 (10th Cir. 2006).  A judge's referral of an attorney to the state disciplinary board does not constitute disqualifying bias against the attorney.  Martin v. Beck, 112 Nev. 595, 597, 915 P.2d 898, 899 (Nev. 1996); State v. Mata, 71 Haw. 319, 325, 789 P.2d 1122, 1125-26 (Haw. 1990).

In his Motion for Disqualification of Judge, Mr. Narmont makes only the barest of allegations against this Court.  He asserts that this Court is biased, but sets forth no facts to support his allegations.  In his Memorandum of Law, he states that a complaint is pending against him at the ARDC based upon this case and "other cases which were supplied to the ARDC by this Court."  Mr. Narmont does not identify any such "other cases" nor does he set forth any factual basis for making the allegation that such "other cases" were "supplied" to the ARDC by this Court.  Mr. Narmont also complains about this Court's "apparent investigation of extrinsic facts" but does not identify any such "extrinsic facts" or explain any basis for making the claim that this Court engaged in any such "investigation".

Mr. Narmont misstates the extent of this Court's involvement in the disciplinary proceedings pending against him.  This Court has made one referral of Mr. Narmont to the ARDC.  On July 8, 2008,

-8-

this Court wrote a letter to the ARDC concerning Mr. Narmont's conduct as debtor's counsel in the Russell Reed Chapter 13 bankruptcy case.[3] This Court's referral to the ARDC involved Mr. Narmont's intentional diversion to himself of court notices and other mail intended for a creditor. One of Mr. Reed's creditors, his employer, the law firm of Hinshaw & Culbertson, had been listed on the bankruptcy schedules by Mr. Narmont at an address which was Mr. Narmont's office address rather than the law firm's actual address. When questioned about this at a hearing, Mr. Narmont admitted that the diversion of mail was intentional and done to spare Mr. Reed the embarrassment of having his employer receive the Court's notices. Based on the facts adduced at that hearing and from the pleadings filed in the case, the Court referred the matter to the ARDC to investigate and proceed as it deemed appropriate. Nothing in the referral involved any "extrinsic facts" or any "investigation" of matters not found directly in the record before this Court.

Under the Illinois Rules of Professional Conduct, any lawyer possessing knowledge that another lawyer has engaged in conduct which reflects adversely on the lawyer's honesty, trustworthiness or fitness, or has engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, is required to report such knowledge to a tribunal or other authority empowered to investigate or act

---

[3] In re Russell L. Reed, Case No. 08-70485, filed March 3, 2008.

upon such violation. *ILCS S Ct Rules of Prof. Conduct, RPC Rules 8.3(a), 8.4(a)(3) & (a)(4)*. This Court referred Mr. Narmont to the ARDC for his conduct in the Reed case because it was ethically obligated to do so.

This Court's referral to the ARDC of Mr. Narmont's conduct in the Reed case does not, contrary to Mr. Narmont's assertion, "seriously call[] into question [the Court's] impartiality in this case[.]" The cases are distinct and unrelated. The Reed referral occurred before Mr. Gibson had filed his letter which first brought the matters involved in this case to the Court's attention. The referral by a judge of a matter to disciplinary authorities does not establish bias or prejudice on the part of the referring judge and does not require disqualification of the referring judge in all matters involving the referred attorney. There is simply no basis for this Court to disqualify itself in this case because, prior to this case coming before the Court, the Court referred a matter in a wholly unrelated case involving Mr. Narmont to disciplinary authorities.

Mr. Narmont does not specifically allege in his Motion for Disqualification or his Memorandum of Law that this Court had any involvement in the referral of his conduct in this case to the ARDC. To the extent that allegation is implied, however, it is inaccurate. Mr. Gibson's letter to the Court was filed on September 29, 2008, and, attached to that letter were copies of Mr.

Gibson's referral letter to the ARDC dated May 4, 2008, and Mr. Narmont's response to the ARDC dated June 18, 2008. These attachments make clear that Mr. Narmont's conduct in this case had been brought to the attention of the ARDC several months before this Court had any involvement in the case. As set forth above, the activities in the case which occurred in 2004 and 2005 took place under the tenure of this Court's predecessor and were not known to this Court until the case reopening in September 2008.

Mr. Narmont also alleges prejudice on the part of this Court because the ARDC relied on or referred to this Court's Order of November 5, 2008, in its filings against him. The actions of representatives of the ARDC in relying on matters of public record such as this Court's orders do not support a finding of bias or prejudice by this Court. This Court has no control over whether the ARDC or any other regulatory or prosecutorial agency reads or relies on its opinions and orders. No inference of bias or prejudice on the part of this Court can logically be drawn from the acts of persons or entities unrelated to this Court.

Mr. Narmont also does not specifically allege that this Court was involved in the referral of the several other matters pending against him at the ARDC. Again, however, to the extent such allegations are implied, they are inaccurate. The ARDC complaint against Mr. Narmont is public record and contains allegations relating to several former clients of Mr. Narmont similar to those

involved in the complaint made by Mr. Gibson. A cursory review of those allegations establishes that they relate to conduct of Mr. Narmont which occurred in bankruptcy cases during the tenure of this Court's predecessor or which occurred outside of the bankruptcy court. This Court played no role in the referral of these other matters to the ARDC. The pendency of these other matters before the ARDC at the same time as the Reed matter, which was referred by this Court, is wholly coincidental and not a basis for disqualification of this Court in this case.

This Court has no personal bias or prejudice against Mr. Narmont which would justify disqualification. In analyzing the requested disqualification, however, the Court must consider whether a reasonable person knowing the facts would perceive a significant risk that this Court would adjudicate the matters pending in Mr. Gibson's case on remand on a basis other than the merits, and whether such a reasonable person would conclude that this Court harbors personal bias or prejudice against Mr. Narmont.

This Court fulfilled an ethical duty in referring Mr. Narmont to the ARDC because of his conduct in the Reed case. The fact that Mr. Narmont's alleged conduct in Mr. Gibson's case was also referred to the ARDC is simply coincidental. This Court did not refer Mr. Narmont to the ARDC because of his conduct in Mr. Gibson's case. The Court's knowledge about matters related to Mr. Narmont's conduct in this case comes from the documents filed by

the parties in this case. The fact that the Court referred Mr. Narmont to the ARDC in the Reed case would not cause an objective and reasonable person to conclude that the Court has bias or prejudice against Mr. Narmont, or that there is any significant risk that the Court will adjudicate matters pending in this case on any basis other than the merits. For these reasons, the Court finds that no factual basis exists for this Court's disqualification in this case. Accordingly, the Motion for Disqualification of Judge will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###